## CHARLES MUSK vs. EMMA M. HALL, et al.

### MARCH 27, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Money Loaned. Evidence.*

In an action to recover for money loaned, it appeared that plaintiff was the step-father of the female defendant, and at the time of making the loans was living in their household. Defendants claimed the money was a gift:

*Held*, that plaintiff might show in evidence that defendants brought an action against him for board, since under such circumstances without further explanation the relations of the parties might be presumed to be that of members of the same family, and evidence that they regarded his position as that of a boarder was relevant, as a basis for the argument as to the probability of a boarder making such gifts.

(2) *Evidence. Motive.*

A party may not be interrogated as to his reason for bringing a certain action, since the motives of the parties are presumed to be proper.

(3) *Money Loaned. Declarations of Wife.*

In an action for money loaned, evidence as to a conversation with the deceased wife of plaintiff in the absence of the plaintiff was properly excluded, where the wife was never a party to the suit.

(4) *Money Loaned. Evidence.*

In an action for money loaned, evidence as to the conduct of plaintiff, while living in defendant's household, was properly excluded.

(5) *Money Loaned. Evidence.*

In an action for money loaned which defendants claimed was a gift, witness for defendant testified that he had sold some land to plaintiff which latter deeded to one of defendants, and that at the time, plaintiff said he was buying the land for defendant and witness remarked that it would be a great present for her. He was then asked, "What was the reason you said it!"

*Held*, that while the language, silence and general behavior of the plaintiff on that occasion were relevant, evidence as to witness's reason for making the remark was properly excluded.

(6) *Executors and Administrators. Husband as Administrator of Wife.*

Where a husband has given bond as administrator of his deceased wife, to pay the just debts of the deceased, the personal property of the wife becomes his, and in an action to recover for money so derived and loaned to defendants he properly sues individually and not in his representative capacity.

Assumpsit for money loaned. Heard on exceptions of defendants and overruled.

Dubois, C. J. This is an action of assumpsit brought by the plaintiff in the Superior Court to recover money alleged by him to have been loaned to the defendants. The plaintiff's bill of particulars contains nine items of sums loaned, including one for $600.00, another for $1,600.00, and still another for $225.00, together with other amounts aggregating $3,369.16. The defendants' plea is the general issue. Upon trial the defendants admitted that they received $2,200.00, but claimed that the same was a gift from the plaintiff, and denied that they received any other amounts for any purpose whatever. The jury found for the plaintiff in the sum of $2,473.50, the same being for the three items hereinbefore referred to with interest thereon from the date of the writ to the time of the rendition of the verdict. In the course of the trial the defendants took certain exceptions to the rulings of the court, to his charge to and refusals to charge the jury, and duly filed their motion for a new trial upon the grounds that the verdict is against the law and the evidence; that they did not have a full, fair and impartial trial; and that they have discovered new and material evidence decisive of the issues in said cause, which they had not obtained and could not by the exercise of due diligence have obtained before the trial or at the trial of said cause. This motion was denied by the justice of the Superior Court and to such denial the defendants took exception and have prosecuted their bill of exceptions to this court and the matter is before us for consideration upon the same.

The verdict was not against the law; the jury followed the instructions and rulings of the court which constitute the law of the case so far as the jury and their verdict are concerned. The verdict was not against the evidence, which was conflicting and raised questions to be determined largely by the weight to be given to the testimony of the

various witnesses, that is, the usual questions of credibility and veracity arose in the case. The verdict was approved by the justice presiding at the trial, and there is nothing to indicate that the jury were influenced by any improper motives in arriving at the verdict, or that the judge erred in sustaining the same. In these circumstances the rule referred to in the case of *Wilcox* v. *The Rhode Island Co.* 29 R. I. 292, governs and the verdict will not be disturbed. The trial judge properly ruled that if the defendants did not have a full fair and impartial trial on account of errors committed by him he was not permitted to review the same under the statute—Gen. Laws, 1909, cap. 298, §12—and that the same was not appropriate as a ground in a motion for a new trial. He also rightly ruled that the affidavits relating to newly discovered evidence could not be regarded as furnishing evidence that could properly change the verdict. The court, therefore, did not err in denying the defendants' motion for a new trial.

The defendants also rely upon their first, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh exceptions, which read as follows:

"*First*. The Court erred in admitting testimony as to the substance of a pending suit brought by the defendants against the plaintiff, to which exception was taken, as shown on page 8 of the transcript.

"*Third*. That the Court erred in admitting testimony as to the particulars of a suit brought by the defendants against the plaintiff, to which admission an exception was taken, as noted on page 93 of the transcript.

"*Fourth*. That the Court erred in excluding testimony offered by the defendants, to which exception was taken, as noted on page 95 of the transcript.

"*Fifth*. That the Court erred in excluding the testimony of Mary Hall as to the declarations of Mary T. Musk in her lifetime, to which exception was taken, as noted on page 98 of the transcript.

"*Sixth.* That the Court erred in excluding testimony offered by the defendants as to the conduct of the plaintiff while living in the defendants' house to which exception was taken, as noted on page 104 of the transcript.

"*Seventh.* That the Court erred in excluding testimony offered by the defendants as to the statements and conversations of Mary T. Musk made in her lifetime, to which exceptions were taken, as noted on page 119 of the transcript.

"*Eighth.* That the Court erred in excluding the testimony of Edward Drew, to which exception was taken, as shown in question 21, on pages 124 and 125 of the transcript.

"*Ninth.* That the Court erred in refusing, upon motion of the defendants, to strike out question and answer 192, on page 154 of the transcript, to which exception was taken, as noted on said page.

"*Tenth.* That the Court erred in refusing to direct a verdict for the defendants, to which exception was taken, as noted on pages 168 and 169 of the transcript.

"*Eleventh.* That the Court erred in that part of his charge to the jury relating to the testimony of a contract or agreement or a statement of the plaintiff with reference to the keeping of the plaintiff by the defendants for life in consideration of a payment by him to the defendants of the money sued for, to which exception was taken, as indicated on page 181 of the transcript."

(1) The first exception relates to the following question put to the plaintiff, by his counsel, in direct examination: "47 Q. Now, when you were put out of the defendants' house was any suit started against you by them?" This was objected to by the counsel for the defendants and, after some discussion, the court ruled as follows: "I don't see that it is very material from your side of the case, but you may show the fact they have brought an action for board and stop there, that is all." The question was then repeated, but not answered, as the plaintiff said he did no hear it. He was then asked the same question, save tha

the initial word "now" was omitted therefrom, and he made answer as follows: "A. One before I did start—before they did put me out. 50 Q. And what was that for? A. For $1,500.00 for me board." It appears from the evidence that the plaintiff is the step-father of the female defendant, having married her mother, and that at the time of making the loans for which he has brought suit he was living in their household. In such circumstances, without further explanation, the relations of the parties might be presumed to be those of members of the same family wherein friendly offices were exchanged, gifts and other gratuities made and received, without expectation of repayment or reward other than that of an approving conscience and that harmony in the family relations that is the result of little words of kindness and little deeds of love. This presumption, however, like all other presumptions yields to proof, and evidence that he loaned them the money, which they claim he gave them, is indicative of his position in that particular. And evidence that they regarded his position in the household to be that of a boarder, rather than that of a member of the family, has some bearing upon the matter in dispute. Whether a mere boarder would be likely to be making gifts of large sums of money to the persons with whom he was boarding was a fair subject for argument in the trial of the case. The court very properly limited the scope of the question and we find no error in his ruling. The exception is without merit and is therefore overruled.

The third exception relates to a question propounded in cross-examination to Emma M. Hall, one of the defendants, by counsel for the plaintiff, as follows: "337 Q. Did you sue him for the period he had been boarding with you? MR. DEVLIN: I think he may show there was a suit, but I don't think he can show when he brought it; that isn't in question. THE COURT: That question was put to the plaintiff, if he hadn't been sued for board. I think I shall allow that to show the respective claims. I don't think it is very important. Exception taken by

Mr. Devlin." The following question was then asked the witness: "Did you and your husband sue Mr. Musk for board after his leaving there? A. It was during the week he was away." For the reasons given regarding the first exception the third exception is also overruled.

(2) The fourth exception relates to the ruling of the court in excluding the following question asked of Emma M. Hall, by her counsel, in redirect examination: "343 Q. You have been asked, Mrs. Hall, about a suit commenced against Mr. Musk for board; will you tell us why that suit was commenced?" The court properly excluded the question, the motives of the parties are presumed to be proper. If board was due and unpaid they had the right to bring suit for the same. The only materiality of the evidence introduced upon this subject was to show that the defendants regarded the plaintiff as a boarder and had sued him for board. The fourth exception is overruled.

(3) The fifth exception has reference to a question asked of Mary Hall, daughter of the defendants, relative to a conversation relating to money had with Mrs. Musk, now deceased, in the absence of her husband. The question was properly excluded; Mrs. Musk was never a party to the suit; the defendants claim the plaintiff gave them the money and he could not be bound by any declarations of his wife made in his absence. The fifth exception is overruled.

The seventh exception was taken to a ruling excluding a similar question relating to Mrs. Musk's statements about money, in the absence of Mr. Musk, asked of William Henry Millar, a son of the defendant Mrs. Hall. The seventh exception is overruled for the same reasons given concerning the fifth exception.

(4) The sixth exception was taken to a ruling of the court in excluding the following question put to Mary Hall: "51 Q. I will ask you if you were sent for by your mother and came home to the house and found Mr. Musk conducting himself in an improper or abusive way and what was

he doing at the time?" The court had already ruled, p. 103: "That wouldn't prevent his right to recover the money if he loaned it, so I don't see it is necessary to go into it at any great length. If there is anything you want to say I will let the jury retire. The question of your right to say he shouldn't stay there any longer isn't denied. Mr. GAINER: We don't deny it, your honor. THE COURT: Therefore, they had a right to say he shouldn't stay there, whatever might be their reason, it was their house." The ruling was correct and the sixth exception is overruled.

(5) The eighth exception related to a ruling by the court which prevented Edward Drew, a witness for the defendants, from testifying as to his reason for making a certain remark to Mr. Musk. The witness had testified that he and his wife had owned some land that was bought by the plaintiff and deeded to Mrs. Hall, the defendant, that at the time of the purchase Mr. Musk said he was buying this land for Mrs. Hall, and that he, the witness, made the remark that it would be a great present for Mr. and Mrs. Hall. He was then asked: "19 Q. Did you make that remark, Mr. Drew? A. I made that remark. 20 Q. And nobody else? A. Nobody else. I made that remark and the reason I made that remark— 21 Q. (By Mr. Devlin.) What was the reason you said it? THE COURT: That isn't material, what he had in his mind. MR. DEVLIN: If the reasons are so as to show that was a conclusion and that we could arrive at the same conclusion, it would help us. THE COURT: He made the remark in the presence of Mr. Musk and he said Mr. Musk didn't say anything. Suppose he thought various things, what is there material about it? The question is as to the intention of Mr. Musk, that's all. I will rule it out. That is so plain it isn't worth talking about. Exception taken by Mr. Devlin." The language, silence and general behavior of the plaintiff on that occasion were proper subjects for the consideration of the jury. The appropriateness of the remark made by Mr. Drew is neither the subject of attack or defense in the

present case and needs no further consideration. The eighth exception is overruled.

The ninth exception has reference to the ruling of the court in refusing to strike from the record the following question and answer asked of Charles H. Hall, defendant, in cross-examination: "192 Q. You would think he would lock up his own money? A. Yes, I would think so." Motion by Mr. Devlin to have the last question and answer stricken out. THE COURT: I think I will let that stand, it is in connection with the previous question and answer." The previous question and answer referred to by the court were: "191 Q. What made you think it was? A. He had a key of it and you might think it would be locked." The foregoing had reference to a money box that the plaintiff had. We find no error in the ruling and the ninth exception is therefore overruled.

The tenth exception is to the refusal of the court to direct a verdict for the defendants upon the ground that there is a variance between the proof and the declaration. The defendants try to interpret the claim of the plaintiff as if it was for the breach of a special contract made with them whereby for the money given them by the plaintiff they were to take care of him as long as he lived. The plaintiff testified concerning his loans to them as follows: "31 Q. And how did you come to make this first payment? (To Famiglietti for building a house for defendants on the lot he had loaned them the money to buy.) A. Because they couldn't get any money anywhere else and they knowed I had it and they just wanted to get it out of me. 32 Q. What did they say when they came for it? A. I might as well let them have it as hold it myself and they would look after me as long as I lived and whenever I wanted it they would give it to me back." It is argued that this means that he was not to charge them for the use of the money, but was to receive a home and lodging as the equivalent for its use, and was entitled to receive the principal on demand therefor. On cross-examination the plaintiff testified: "234

Q. Well, then, what did you mean in answering the questions of Mr. Gainer by saying they were to keep you as long as you lived? A. For the money I loaned them they was to keep me. 235 Q. For the money you loaned them they was to keep you as long as you lived? A. They was to keep me as long as I lived. 236 Q. Did you have that arrangement with them? A. According to their agreement to that effect. 237 Q. That was how you came to give them the money, on their agreement to keep you as long as you lived? A. Why, sure. They couldn't get the money anywhere else and they had none themselves and they made a proposition I might just as well let them have the money to do it and I would never want, they would look after me. 238 Q. So it was upon that condition or upon that arrangement that you gave them this money, paid it out? A. Certainly it was." The defendants testify that there was no loan, and no agreement to take care of the plaintiff as long as he lived in payment of either principal or interest of the money received, but that the same was purely a gift. The plaintiff's claim as he made it is not unreasonable and it cannot be said that the jury would not be justified in taking that view of it. According to his claim as evidenced by his bill of particulars he had advanced or loaned to the defendants $3,369.16, which at 6 per cent. interest would produce $203.10 per annum. Board at $4 per week would amount to $208. An examination of the evidence submitted shows no variance between the proof and declaration. The second ground urged upon this motion was that the title to the money loaned was in the plaintiff as administrator of his wife's estate and that he should have brought suit in a representative capacity and not for himself individually. There is nothing in this claim. As appears by the papers introduced in the case the plaintiff gave bond with the defendant Emma M. Hall as surety to pay the just debts of the deceased. Upon so doing the personal estate that formerly belonged to his wife became his property under Gen. Laws 1896, cap. 194,

§ 9; cap. 212, § 9 and cap. 220, § 6.   See *Kenyon* v. *Saunders,* 18 R. I. at p. 593.   We held in the case of *Adams* v. *Probate Court of Central Falls,* 26 R. I. at p. 244:   "An executor who is also residuary legatee may give bond to pay the funeral charges, debts, and legacies, and, having done this, he may take posssession of the assets as his own property and dispose of them as he sees fit to his own use.   He may pay the debts and legacies either out of the assets or out of his own estate.   Neither the court nor the legatees are concerned with his management of the estate or with its fortunes, or can call him to account therefor after it passes into his hands.   If losses occur, the executor must bear them.   If the property increases in value the profit is his. To all intents and purposes the bond stands in place of the estate.   These obligations are not elements of an agreement between parties, but are provisions of general law."   This is no less true in the case of a husband who has given the statutory bond.   There is no merit in the motion for the direction of a verdict and the same was properly overruled. The defendants' tenth exception is overruled.   The defendants' eleventh exception was taken at the close of the charge of the court as follows:   "MR. DEVLIN: The defendant takes exception to that part of the charge of the court relating to the testimony of any contract to keep the plaintiff for life."   This is in effect an exception to the charge of the court either as misstating testimony or as attempting to draw inferences therefrom.   A careful examination of the charge discloses no error in relation to the same and the eleventh exception is therefore overruled.

All of the defendants' exceptions are overruled, and the case is remitted to the Superior Court, with direction to enter judgment upon the verdict.

*O'Shaunnessy, Gainer and Carr,* for plaintiff.

*John I. Devlin, Daniel P. Macdonald,* for defendant.